IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTIRCT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JASON P. TUCKER, On Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> AMSOUTH BANCORPORATION, C. DOWD RITTER, RONALD L. KUEHM, JR., CLAUDE B. NEILSEN, JAMES R. MALONE, EARNEST W. DEAVENPORT, JR., MARTHA R. INGRAM, CHARLES D. MCCRARY, DAVID J. COOPER, SR., DON DEFOSSET, <br><br> Defendants. | Case No. _____ <br><br> <u>CLASS ACTION</u> |

**COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

## SUMMARY OF THE ACTION

1.   This is a class action on behalf of the public stockholders of AmSouth Bancorporation ("AmSouth" or the "Company") against AmSouth and its Board of Directors ("Board") to enjoin or remedy defendants' misconduct undertaken in connection with the proposed acquisition of the outstanding shares of AmSouth (the "Proposed Acquisition") in a transaction with Regions Financial Corp. ("Regions").

2.   On or about May 25, 2006, defendants announced that the Company's Board had approved the Proposed Acquisition which provides for a stock-for-stock merger in which 0.7974 shares of Regions will be exchanged for each share of AmSouth common stock. The purpose of the Proposed Acquisition is to deprive plaintiff and the other public stockholders of AmSouth (the "Class") of their equity investment in AmSouth and the benefits thereof.

3.   Based on Regions' closing price of $35.53 on May 24, 2006, the stock-for-stock conversion equates to $28.33 for each AmSouth share -- *2% below AmSouth's close of $28.90 a share on May 24, 2006, the day before the announcement of the Proposed Acquisition.* Thus, far from representing a premium which is the case in nearly every other corporate merger, the Proposed Acquisition is a "take under" meaning plaintiff and the Class will receive less than the market value of the shares prior to the announcement of the Proposed Acquisition.

4.   Defendants have a fiduciary duty to maximize -- not minimize -- shareholder value. Nevertheless, defendants admittedly did not shop the Company via an open market process to obtain maximization for shareholders. Instead, defendants settled on one suitor -- and one suitor only -- in a sweetheart deal which provides preferential treatment to defendants at the expense of the Class including, *inter alia,* that (i) each defendant will retain their prestigious and lucrative board membership in the combined Regions including all the emoluments associated therewith; (ii) defendant C. Dowd Ritter ("Ritter") will become the President and Chief Executive Officer ("CEO")

of the combined Regions; and (iii) upon information and belief, defendants will receive hundreds of thousands of dollars in immediate payoffs via the acceleration of the vesting of their stock options.

5. In exchange for these control benefits and in breach of their fiduciary duties, defendants conceded to and accepted the inadequate take under consideration. Moreover, and in further breach of their fiduciary duties and to lock-up the deal and deter any other potential suitors and further entrench themselves, defendants agreed to an illegal and draconian "poison pill" in the form of reciprocal options of 19.9% (the maximum amount allowable without shareholder approval) which grants Regions an option to purchase nearly 20% of the Company virtually assuring the lock-up of this sweetheart deal.

6. Finally, defendants have repeatedly referred to the Proposed Acquisition as a "merger of equals." However, as the following chart makes clear, from the perspective of AmSouth shareholders the Proposed Acquisition is anything but a merger of equals:

|  | Regions | Amsouth |
|---|---|---|
| **Market Value** | $16 billion | $10 billion |
| **Assets** | $84.6 billion | $52.9 billion |
| **Annual Revenue** | $4.7 billion | $2.5 billion |
| **Deposits** | $60.5 billion | $37.1 billion |
| **Employees** | 24,928 | 11,690 |
| **Branches** | 1,312 | 644 |
| **Financial Advisors** | 1,070 | 270 |

7. Indeed, if the Proposed Acquisition is consummated AmSouth shareholders will represent only 38% of the combined company. Thus, the Proposed Acquisition represents a change of control for AmSouth shareholders in which they will not receive any premium -- and in fact will receive a discount for their shares in exchange for relinquishing control of the Company. Defendants on the other hand, through breaches of their fiduciary duty, entrenchment and the draconian poison pill will fare much better retaining their lucrative board positions with the combined Regions including all the emoluments associated therewith.

8. Plaintiff seeks to enjoin the Proposed Acquisition and/or the Poison Pill or, alternatively, rescind the Proposed Acquisition in the event it is consummated. The Proposed Acquisition is the product of a hopelessly flawed process that was designed to subvert the interests of plaintiff and the other public stockholders of AmSouth.

## JURISDICTION AND VENUE

9. This Court has diversity jurisdiction over the parties pursuant to 28 U.S.C. § 1332 and the Securities Litigation Uniform Standards Act (SLUSA), 15 U.S.C.§ 77p(d)(1)(A).

10. Venue is proper in this county in that the actions complained of arose in this county.

## PARTIES

11. Plaintiff Jason P. Tucker at all times relevant hereto has been and is a stockholder of AmSouth.

12. Defendant AmSouth is a Delaware corporation with its principal place of business located at 1900 Fifth Avenue North, AmSouth Center, 10th Floor, Birmingham, AL 35203.

13. Defendant Ritter is Chairman of the Board, President and CEO of the Company.

14. Defendant Ronald L. Kuehn, Jr. ("Kuehn") is a director of the Company.

15. Defendant Claude B. Nielsen ("Nielsen") is a director of the Company.

16. Defendant James R. Malone ("Malone") is a director of the Company.

17. Defendant Earnest W. Deavenport, Jr. ("Deavenport") is a director of the Company.

18. Defendant Martha R. Ingram ("Ingram") is a director of the Company.

19. Defendant Charles D. McCrary ("McCrary") is a director of the Company.

20. David J. Cooper, Sr. ("Cooper") is a director of the Company.

21. Defendant Don DeFosset ("DeFosset") is a director of the Company.

22. The defendants named in ¶¶13-22 are sometimes collectively referred to herein as the "Individual Defendants."

## DEFENDANTS' FIDUCIARY DUTIES

23.     By reason of the above Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with plaintiff and the other public stockholders of AmSouth and owe plaintiff and the other members of the Class a duty of highest good faith, fair dealing, loyalty, due care and full, candid and adequate disclosure.

24.     Each of the Individual Defendants is required to act in good faith, in the best interests of the corporation's shareholders and with such care, including reasonable inquiry, as would be expected of an ordinarily prudent person.  In a situation where the directors of a publicly traded company undertake a transaction that may result in a change in corporate control (particularly when it involves a decision to eliminate the shareholders' equity investment in a company), applicable law requires the directors to take all steps to maximize the value shareholders will receive rather than use a change of control to benefit themselves.  To diligently comply with this duty, the directors of a corporation may not take any action that: adversely affects the value provided to the corporation's shareholders; contractually prohibits them from complying with or carrying out their fiduciary duties; discourages or inhibits alternative offers to purchase control of the corporation or its assets; or will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders.

25.     As described herein, the Individual Defendants have breached their fiduciary duties by taking actions designed to deter higher offers from other potential acquirers so as to ensure that certain defendants receive hundreds of thousands of dollars in personal benefits at the expense of AmSouth's shareholders and that the Board retains their lucrative and prestigious board positions after the Proposed Acquisition.  Defendants cannot possibly fulfill their fiduciary obligations after implementing provisions, including the Poison Pill, which disable them from maximizing

shareholder value. The Individual Defendants have breached their fiduciary obligation to act reasonably.

## CLASS ACTION ALLEGATIONS

26. Plaintiff brings this action on his own behalf and as a class action on behalf of all holders of AmSouth stock who are being and will be harmed by defendants' actions described below. Excluded from the Class are defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any defendant.

27. This action is properly maintainable as a class action.

28. The Class is so numerous that joinder of all members is impracticable. According to AmSouth's SEC filings, there are more than 346 million shares of AmSouth common stock outstanding held by thousands of shareholders geographically dispersed across the country.

29. There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, *inter alia*, the following:

(a) whether defendants have breached their fiduciary duties of undivided loyalty, independence or due care with respect to plaintiff and the other members of the Class in connection with the Proposed Acquisition;

(b) whether the Individual Defendants are engaging in self-dealing in connection with the Proposed Acquisition;

(c) whether the Individual Defendants are unjustly enriching themselves and other insiders or affiliates of AmSouth;

(d) whether defendants have breached any of their other fiduciary duties to plaintiff and the other members of the Class in connection with the Proposed Acquisition, including the duties of good faith, diligence, honesty and fair dealing;

(e) whether the defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other offers for the Company or its assets; and

(f) whether plaintiff and the other members of the Class would suffer irreparable injury were the transactions complained of herein consummated.

30. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff does not have any interests adverse to the Class.

31. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class.

32. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

33. Plaintiff anticipates that there will be no difficulty in the management of this litigation as a class action. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

34. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## BACKGROUND TO THE PROPOSED ACQUISITION

35. According to the Company's public filings:

> AmSouth is a regional bank holding company with $53 billion in assets, more than 680 branch banking offices and more than 1,200 ATMs. AmSouth operates in Florida, Tennessee, Alabama, Mississippi, Louisiana and Georgia. AmSouth is a leader among regional banks in the Southeast in several key business segments, including consumer and commercial banking, small business banking, mortgage lending, equipment leasing, and trust and investment management services. AmSouth also offers a complete line of banking products and services at its web site, www.amsouth.com.

36. On May 24, 2006, the Company's common stock closed at $ 28.90 per share.

37. On May 25, 2006, AmSouth and Regions issued a joint press release entitled "Regions Financial Corp. and AmSouth Bancorporation to Merge" which stated in relevant part:

> Regions Financial Corp. (NYSE: RF) and AmSouth Bancorporation (NYSE: ASO) announced today that they have agreed to merge, forming one of the top 10 bank holding companies in the United States . The new company will have almost $140 billion in assets, hold nearly $100 billion in deposits and operate 2,000 branches in 16 states across the South, Midwest and Texas. Combined, the two companies employ 37,000 people. The Regions name will be retained.
>
> Jackson W. Moore, 57, chairman, president and chief executive officer of Regions, will be chairman of the combined company. ***C. Dowd Ritter, 58, chairman, president and chief executive officer of AmSouth, will be the president and chief executive officer of Regions.***
>
> \* \* \*
>
> The agreement provides for a stock-for-stock merger in which 0.7974 shares of Regions will be exchanged, on a tax-free basis, for each share of AmSouth common stock. Based upon closing stock prices of both companies on May 24, 2006, the proforma combined market capitalization of the new institution would be approximately $26 billion.
>
> \* \* \*
>
> ***The boards of directors of Regions and AmSouth will be combined to form a consolidated board of directors that will leverage the expertise and talent of both companies.***

38. Based on Regions' closing price of $35.53 on May 24, 2006, the stock-for-stock conversion equates to $28.33 for each AmSouth share -- ***2% below AmSouth's close of $28.90 a share on May 24, 2006, the day before the announcement of the Proposed Acquisition.*** Thus, far from representing a premium which is the case in nearly every other corporate merger, the Proposed Acquisition is a "take under" meaning plaintiff and the Class are receiving less than the market value of the shares prior to the announcement of the Proposed Acquisition.

39. Take under transactions are extremely rare in the corporate merger context especially in a change of control context such as the Proposed Acquisition as shareholders are typically paid a premium for their shares in exchange for ceding control of their company. The inadequacy of the

share price exchange is further evidenced by the fact certain analysts have stated the Company is worth more than the $28.33 per share conversion, perhaps as much as $36.00 per share.

40. For example, an article appearing in the *Wall Street Journal Online* on May 25, 2006 stated in relevant part:

> For each of their shares, AmSouth shareholders would receive 0.7974 share of Regions stock. Based on Regions' closing price of $35.53 yesterday, that's $28.33 for each AmSouth share -- 2% below yesterday's AmSouth close of $28.90 a share. That makes the deal a "take-under," meaning that shareholders get a price below the current market value.
>
> While the deal is also being described as something of a "merger of equals," it is clear that Regions would have the bulk of the power, having a $16 billion market capitalization, compared with AmSouth's $10 billion. Regions would also have more seats on the company's board, people familiar with the matter said, and the new bank would carry the Regions name.
>
> ***Take-unders are often difficult for shareholders to stomach, because holders typically want to be rewarded for ceding control of a company.*** For such a deal to win the market's blessing, investors would have to believe that the two banks could significantly cut their costs -- and that the benefits would trickle down to shareholders. They must also believe that another suitor wouldn't have paid more than what those cost cuts are worth over time.
>
> That does create some risk for the Regions deal, as an unsolicited bidder could step into the fray offering a bigger initial payout. ***Last Friday, Citigroup banking analyst Keith Horowitz estimated that AmSouth could sell for $30 to $32 a share, or $36 a share in a best-case scenario.***

41. Further commenting on the inadequacy of the merger consideration was an article appearing in the *Motley Fool* on May 25, 2006 entitled "AmSouth and Regions' Mediocre Merger" which stated in relevant part:

> ***The valuation of the price that Regions offered suggests to me that AmSouth may have consented to a slightly lower price to ensure that its CEO would get to run the show.*** It's not a dramatic undervaluation, mind you, but I could see some rival banks bettering the offer by 10% or 15%, yet still making the deal work long-term.

42. Indeed, defendant Ritter admitted defendants did not comply with their fiduciary obligations and shop the Company to obtain the highest price for shareholders in a conference call with analysts on May 25, 2006:

JOHN PANDTLE - RAYMOND JAMES - ANALYST

I wasn't suggesting you would sell off Florida -- I would suggest that maybe there was a buyer to pay a premium to get access to the Florida piece of the franchise. *But it sounded like you are saying that you did not test the market?*

-------------------------------------------------------------------------------

DOWD RITTER - AMSOUTH - CHAIRMAN, PRESIDENT AND CEO

*No siree. This was absolutely -- this opportunity was what we focused on.*

43.  Thus, defendants admittedly did not shop the Company via an open market process to obtain maximization for shareholders. Instead, defendants settled on one suitor -- and one suitor only -- in a sweetheart deal which provides preferential treatment to defendants at the expense of the Class including, *inter alia*, that (i) each defendant will retain their prestigious and lucrative board membership in combined Regions including all the emoluments associated therewith; (ii) defendant Ritter will become the President and CEO of the combined Regions; and (iii) upon information and belief, defendants will receive hundreds of thousands of dollars in immediate payoffs via the acceleration of the vesting of their stock options.

44.  In exchange for these control benefits and in breach of their fiduciary duties, defendants conceded to and accepted the inadequate take under consideration. Moreover, and in further breach of their fiduciary duties and to lock-up the deal and deter any other potential suitors and further entrench themselves, defendants agreed to an illegal and draconian "poison pill" in the form of reciprocal options of 19.9% (the maximum amount allowable without shareholder approval) which grants Regions an option to purchase nearly 20% of the Company virtually assuring the lock-up of this sweetheart deal.

45.  Finally, defendants have repeatedly referred to the Proposed Acquisition as a "merger of equals." However, as the following chart makes clear, from the perspective of AmSouth shareholders the Proposed Acquisition is anything but a merger of equals:

|  | Regions | Amsouth |
|---|---|---|
| **Market Value** | $16 billion | $10 billion |
| **Assets** | $84.6 billion | $52.9 billion |
| **Annual Revenue** | $4.7 billion | $2.5 billion |
| **Deposits** | $60.5 billion | $37.1 billion |
| **Employees** | 24,928 | 11,690 |
| **Branches** | 1,312 | 644 |
| **Financial Advisors** | 1,070 | 270 |

46. Indeed, if the Proposed Acquisition is consummated AmSouth shareholders will represent only 38% of the combined company. Thus, the Proposed Acquisition represents a change of control for AmSouth shareholders in which they will not receive any premium -- and in fact will receive a discount for shares in exchange for relinquishing control of the Company. Defendants on the other hand, through breaches of their fiduciary duty, entrenchment and draconian poison pill will fare much better retaining their lucrative board positions with the combined Regions including all the emoluments associated therewith.

## CAUSE OF ACTION

### Breach of Fiduciary Duties Against All Defendants

47. Plaintiff repeats and realleges each allegation set forth herein.

48. The defendants have violated the fiduciary duties of care, loyalty, candor and independence owed under Delaware Law to the public shareholders of AmSouth and have acted to put their personal interests ahead of the interests of AmSouth shareholders.

49. By the acts, transactions and courses of conduct alleged herein, defendants, individually and acting as a part of a common plan, are attempting to advance their interests at the expense of plaintiff and other members of the Class.

50. The Individual Defendants have violated their fiduciary duties by entertaining a transaction with Regions without regard to the fairness of the transaction to AmSouth's shareholders. Defendant AmSouth directly breached and/or aided and abetted the other defendants' breaches of fiduciary duties owed to plaintiff and the other holders of AmSouth stock.

51. As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, candor and independence owed to the shareholders of AmSouth because, among other reasons:

    (a)    they failed to properly value AmSouth;

    (b)    they ignored or did not protect against the numerous conflicts of interest resulting from their own interrelationships or connection with the Proposed Acquisition;

    (c)    they failed to disclose and/or obtain the true value of the Company;

    (d)    they failed to allow any competitive bidding process to occur to ensure that they had negotiated the highest possible purchase price; and

    (e)    they agreed to a Poison Pill that will have the effect of discouraging other prospective suitors.

52. Because the Individual Defendants dominate and control the business and corporate affairs of AmSouth, and are in possession of private corporate information concerning AmSouth's assets, business and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of AmSouth which makes it inherently unfair for them to pursue any proposed transaction wherein they, or one of them, will reap disproportionate benefits.

53. By reason of the foregoing acts, practices and course of conduct, the defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward plaintiff and the other members of the Class.

54. Plaintiff and the Class will suffer irreparable injury as a result of defendants' actions, including their self-dealing.

55. Unless enjoined by this Court, the defendants will continue to breach their fiduciary duties owed to plaintiff and the Class, and may consummate the Proposed Acquisition which will

exclude the Class from its fair share of AmSouth's valuable assets and businesses, and/or benefit them in the unfair manner complained of herein, all to the irreparable harm of the Class, as aforesaid.

56.  Defendants are engaging in self-dealing, are not acting in good faith toward plaintiff and the other members of the Class and have breached and are breaching their fiduciary duties to the members of the Class.

57.  Unless the Proposed Acquisition and Poison Pill are enjoined by the Court, defendants will continue to breach their fiduciary duties owed to plaintiff and the members of the Class, will not engage in arm's-length negotiations on the proposed Acquisition terms, and will not supply to AmSouth's stockholders sufficient information to enable them to cast informed votes on the Proposed Acquisition and may consummate the Proposed Acquisition, all to the irreparable harm of the members of the Class.

58.  Plaintiff and the members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can plaintiff and the Class be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands preliminary and permanent injunctive relief in his favor and in favor of the Class and against defendants as follows:

A.  Declaring that this action is properly maintainable as a class action;

B.  Declaring and decreeing that the Proposed Acquisition and/or the Poison Pill are in breach of the fiduciary duties of the defendants and, therefore, any agreement arising therefrom is unlawful and unenforceable;

C.  Enjoining defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Acquisition, unless and until the Company adopts and implements a procedure or process to obtain the highest possible price for shareholders;

D.   Directing the Individual Defendants to exercise their fiduciary duties to obtain a transaction which is in the best interests of AmSouth's shareholders;

E.   Rescinding, to the extent already implemented, the Proposed Acquisition or any of the terms thereof;

F.   Rescinding, to the extent already implemented, the Poison Pill or any of the terms thereof;

G.   Imposition of a constructive trust, in favor of plaintiff, upon any benefits improperly received by defendants as a result of their wrongful conduct;

H.   Awarding plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

I.   Granting such other and further equitable relief as this Court may deem just and proper.

DATED: May 30, 2006

Respectfully submitted,

*/s/ Richard Rouco*

WHATLEY DRAKE, LLC
JOE R. WHATLEY, JR.
RICHARD P. ROUCO
PETER H. BURKE
2323 2nd Avenue North
Birmingham, Alabama 35203
Telephone: 205/328-9576
205-328-9669 (Fax)

BARRETT, JOHNSTON & PARSLEY
GEORGE E. BARRETT
DOUGLAS S. JOHNSTON, JR.
EDUMND CAREY
TIMOTHY L. MILES
GERALD E. MARTIN
217 Second Avenue, North
Nashville, TN 37201-1601
Telephone: 615/244-2202
615/252-3798 (fax)

Attorneys for Plaintiff